# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**United States of America**

*Plaintiff and Appellee,*

*v.*

**Keith Preston Gartenlaub**

*Defendant and Appellant.*

### No. 22-55799

Appeal from United States District Court
Central District of California
Hon. Christina A. Snyder
U.S. District Court Case Nos.
2:20-CV-3711-CAS
8:14-CR-00173-CAS-1

### APPELLANT'S REPLY BRIEF

### TOR EKELAND LAW PLLC
Tor Ekeland
Michael Hassard
tor@torekeland.com
michael@torekeland.com
30 Wall Street, 8th Floor
New York, NY 10005
(718) 737-7264

*Pro Bono* Attorneys for KEITH PRESTON GARTENLAUB

**Table of Contents**

INTRODUCTION ................................................................................... 3

STATEMENT ........................................................................................ 5

    A.    The January 2014 Secret FISA Search ............................... 5

    B.    The National Security State's History of Illegal Acts Against Americans ........................................................................... 7

    C.    DOJ OIG Documents Pervasive Errors in FISC Search Warrant Applications ................................................................. 8

ARGUMENT .......................................................................................... 9

    I.    Appellant was Denied Due Process ....................................... 10

    II.    The Law of the Case Does Not Bar Appellant's Claims .................... 10

    III.    Appellant was Denied a Full and Fair Opportunity to Litigate the Fourth Amendment Issues ............................................................ 12

    IV.    Appellant's Uncertified Issues Have Merit ........................ 15

CONCLUSION ...................................................................................... 16

# Table of Authorities

**CASES**

*Brock v. United States*, 573 F.3d 497 (7th Cir. 2009) ............................................. 13

*In re Antrobus*, 563 F.3d 1092 (10th Cir. 2009) ..................................................... 11

*Stone v. Powell*, 428 U.S. 465 (1976) ....................................................................... 9

*United States v. Alexander*, 106 F.3d 874 (9th Cir. 1997). ..................................... 12

*United States v. Lee Vang Lor*, 706 F.3d 1252 (10th Cir. 2013) ............................. 14

*United States v. Mohamud*, 3:10-cr-00475-HZ (D. Or. Sep. 19, 2023) .................. 15

*United States v. Mohamud*, No. 23-3594 (9th Cir.) ................................................ 15

**OTHER AUTHORITIES**

Gerald K. Haines, *The Pike Committee Investigations and the CIA*, STUDIES IN INTELLIGENCE WINTER (1998-1999) ..................................................................... 7

Project MKULTRA, The CIA's Program Of Research In Behavioral Modification, Joint Hearing Before the Select Committee on Intelligence and the Subcommittee on Health and Scientific Research of the Committee on Human Resources UNITED STATES SENATE, 95th Cong. 1st Sess. August 3, 1977 ............ 7

*The Select Committee to Study Governmental Operations with Respect to Intelligence Activities, Foreign and Military Intelligence* CHURCH COMMITTEE REPORT, no. 94-755, 94th Cong., 2d Sess. Washington, D.C.: United States Congress. 1976 ........................................................................................................ 7

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. V and VI .................................................................................. 10

# INTRODUCTION

Throughout history tyrants have used secret courts and secret evidence against their opponents. When the Framers wrote the Constitution, the memory of the infamous ex-parte, inquisitorial Star Chamber had yet to fade. The ex-parte, inquisitorial national security FISA Court (FISC), meant to protect Americans from the illegal surveillance abuses by the national security state, is in danger of becoming a similar instrument of tyranny. Because its secret determinations are not subject to any meaningful adversarial process, and it facilitates the use of secret searches and unreviewable evidence in non-national security criminal prosecutions of U.S. citizens. Like this one.

This case involves the use of secret evidence obtained from a secret warrant from a secret court used against a U.S. citizen in a domestic, non-national security criminal prosecution. Defendant/Appellant has never been able to see, challenge or use this secret evidence in the adversarial process guaranteed by the United States Constitution.[1]

---

[1] The Government construes Appellant's use of the word 'evidence' narrowly to only mean information admitted at trial. Appellant uses the word broadly, as it is commonly used, to refer to information, documents, and materials relevant to his defense including that withheld by the Government, or previously unknown, that he has never been able to access. Specifically, the secret FISC search warrant application and the information and forensic records related to it and the months-long secret search of his home and devices.

This case is unique. Most of the cases the Government cites in opposition are non-FISA cases. None of them involve the use of secretly seized evidence against a U.S. citizen in a non-national security domestic criminal case like that at issue here. Defendant/Appellant has never had a meaningful opportunity to challenge this secret evidence in the adversarial process using the new evidence of pervasive errors in the secret FISC search warrant application process because it came to light after direct appeal. And to the extent that the courts have reviewed evidence related to the Government's secret FISC search, it has only been reviewed ex-parte and inquisitorially throughout this case, without the knowledge of the pervasive errors in the FISC search warrant application process. It was only after completion of his direct appeal that new evidence came to light of the extensive errors in all the FISC search warrant applications the Department of Justice's Office of the Inspector General (OIG) chose to review.

After a preliminary review, DOJ's OIG declined further review of Defendant/Appellant's FISA search warrant application and related *Woods* file without explanation.[2] This was not an adversarial review of Defendant's FISC case file. The DOJ's OIG's denial of review is a non-judicial decision from an organ of the prosecution. Nor does it change the fact that evidence of pervasive errors in the

---

[2] Gov. ER-9.

secret FISC search warrant application process is relevant and material to Appellant mounting a complete defense. Not only would the information influence trial strategy, but it is relevant material information for a judge and jury to consider when it weighs the weight and credibility of the Government's case. For these reasons, along with those argued below and in Appellant's Opening Brief, this Court should reverse the District Court's denial of his habeas corpus petition on the Fourth Amendment and Due Process issues as certified, or in the alternative grant relief on the uncertified Eight Amendment issue and terminate Appellant's lifetime probation.

## STATEMENT

### A. The January 2014 Secret FISA Search

In January 2014, after failing to find evidence of Appellant working as an agent of a foreign power through a standard Fed. Crim. R. 41 search warrant, the Government executed a FISC search warrant on Appellant's home and devices. The FISC issued the search warrant based on secret evidence that the Appellant has never seen or had an opportunity to subject to meaningful adversarial challenge. Although FISA mandates that a FISC search warrant only be issued upon a finding of probable cause that a target is an agent of a foreign power, Appellant has never been prosecuted for being a foreign agent, nor is there any evidence of this in the public record.

Over the course of three months beginning in January 2014, the FBI secretly entered Appellant's home, imaged his hard drives, searched and accessed whatever they wanted without limitation as well as wiretapping him. It was the alleged fruits of this secret search that were the probable cause foundation for the August 2014 Fed. R. Crim. Pro. 41 search warrants the Government leads its brief discussing.[3] But the secret search starting in January 2014 came first.

The August 2014 warrants search for what the Government already purportedly found with its secret FISC search warrant. Without the FISC warrant, there is no second bite at the apple using the August 2014 Fed. R. Crim Pro. search warrants. It is only after the failure of a June 2013 Fed. R. Crim Pro. 41 search warrant to find any incriminating evidence that the Government obtained its secret FISC search warrant.[4]

When the Government leads its brief discussing its August 2014 search warrants, it downplays the fact that it asked for a search warrant for things that it already claimed to have found through its FISC search warrant. Indeed, the alleged fruits of the secret FISC warrant formed the foundation for the August 2014 probable cause determination.

---

[3] Gov. Br. p. 3.
[4] *See* App. Opening Br. p. 20.

**B. The National Security State's History of Illegal Acts Against Americans**

In 1975, after widespread illegal domestic surveillance and activity targeting U.S. citizens by agencies like the CIA, NSA, FBI, and IRS, Congress created the *Church Committee* to investigate these abuses. The *Church Committee* included a House counterpart, the *Pike Committee*, and an executive counterpart, the *Rockefeller Committee*.[5]

These abuses include the national security state's drugging and torturing of U.S. citizens as part of human experimentation into mind control through its MKULTRA program;[6] the U.S. Government's domestic surveillance and infiltration of political and civil-rights organizations through *COINTELPRO*;[7] and the U.S. Government's *Project SHAMROCK*, through which major

---

[5] Gerald K. Haines, *The Pike Committee Investigations and the CIA*, STUDIES IN INTELLIGENCE WINTER (1998-1999) (available at: https://www.cia.gov/resources/csi/static/CIA-Pike-Committee-Investigations.pdf). Mr. Haines was the Chief Historian at the CIA and headed the CIA's History Staff.

[6] *See e.g. The Select Committee to Study Governmental Operations with Respect to Intelligence Activities, Foreign and Military Intelligence* CHURCH COMMITTEE REPORT, no. 94-755, 94th Cong., 2d Sess. Washington, D.C.: United States Congress. 1976. p. 392; *see also Project MKULTRA, The CIA's Program Of Research In Behavioral Modification*, Joint Hearing Before the Select Committee on Intelligence and the Subcommittee on Health and Scientific Research of the Committee on Human Resources UNITED STATES SENATE, 95th Cong. 1st Sess. August 3, 1977.

[7] *See e.g. Supplementary Detailed Staff Reports on Intelligence Activities and the Rights of Americans*, Book III Final Report, Select Committee To Study Governmental Operations, UNITED STATES SENATE (Apr. 23, 1976).

telecommunications providers shared traffic information with the NSA.[8] The *Church Committee* led to Congress passing the Foreign Intelligence Surveillance Act (FISA) which requires federal law enforcement and intelligence agencies to obtain authorization for gathering foreign intelligence information, and established the Foreign Intelligence Surveillance Court to oversee requests for surveillance warrants. FISA requires a finding of probable cause that a U.S. citizen is an agent of a foreign power before the FISC can issue its secret national security search and seizure warrants. The FBI's FISC search warrant application process is riddled with errors and is not subject to any meaningful public scrutiny or adversarial challenge.

### C. DOJ OIG Documents Pervasive Errors in FISC Search Warrant Applications

As discussed in Appellant's Opening Brief, recent limited investigations by the Department of Justice's Office of the Inspector General revealed pervasive errors in all the FBI's FISC search warrant applications that it chose to review. Appellant has never been able to review the FISC search warrant application in his case, nor any secret evidence related to the months-long search of his computer devices and surveillance of him and his home.

DOJ's National Security Division determined that none of the errors

---

[8] *Id.*

reported by the OIG impacted the validity FISC's probable cause determinations in the cases reviewed.[9] Needless to say, this is not a determination based upon an independent review, rather it is one made by an agency whose interests are at stake. Neither the DOJ's National Security Division nor the DOJ's OIG's report have been subject to any independent audit from any outside agency. After preliminary review, the DOJ's OIG declined without explanation to further review Appellant's file.[10]

## ARGUMENT

Appellant's Due Process and Fourth Amendment claims are not barred by the law of the case doctrine nor *Stone v. Powell*.[11] The new evidence of pervasive errors in the secret FISC search warrant application process is material and relevant information for a judge and jury to consider when, among other things, evaluating the weight and credibility of the Government's case. Without it, Appellant was denied adversarial process; his right to put on a complete defense; and his right to litigate the Fourth Amendment issues fully and fairly. The frequency of errors in the secret FISC search warrant application process is

---

[9] Gov. Br. at 17-18.
[10] *Id.* at 18.
[11] *Stone v. Powell*, 428 U.S. 465 (1976).

material and relevant to any challenge - including a *Franks* hearing denied to Appellant - to the ex-parte inquisitorial process determining the FISC warrant's probable cause. Finally, Appellant's uncertified claims are meritorious.

## I. Appellant was Denied Due Process

The United States Constitution guarantees a criminal defendant the right to put on a complete defense.[12] The Government argues Appellant, via his Due Process arguments, attempts to relitigate in front of the jury his motion to suppress.[13] This is incorrect. The evidence of pervasive errors in the secret FISA search warrant application process combined with the fact that Appellant was denied all access to the FISC search warrant application, evidence and forensics related to the months-long secret search of his home and devices is material and relevant information for a judge and jury to consider when deciding Appellant's case. Appellant is arguing that the omission of the new evidence constitutes a denial of his right to put on a complete defense and to adversarial process, as well as to fully and fairly litigate his Fourth Amendment rights.

## II. The Law of the Case Does Not Bar Appellant's Claims

The new evidence of pervasive errors in the secret FISC search warrant application process was not part of any decision at trial or on direct appeal because

---

[12] U.S. Const. Amend. V and VI.
[13] Gov. Br. at 33-34.

it only emerged afterwards. While the District Court, and the Ninth Circuit on direct appeal, reviewed the secret FISC search warrant application ex-parte, this was done without adversarial challenge nor knowledge of the error-prone nature of the FISC search warrant application process. Nor did trial, or appellate counsel on direct appeal, have the benefit of this new evidence in formulating strategy and making arguments.

That there are pervasive errors in the secret FISC search warrant application process is central to the decision whether to grant a *Franks* hearing, trial counsel's pretrial discovery motions, and trial and appellate strategy. It is not an ancillary issue and is substantial new evidence as it goes to the core of the credibility of the Government's case in front of judge and jury. The new evidence raises "substantial doubt as to the correctness of the prior decision."[14]

The DOJ's OIG's unexplained denial of further review of Appellant's FISC case file does not change the analysis. Rather, it raises the question why the OIG fails to give any substantive reasons as to why it chose not to conduct further review. Nor is the DOJ's OIG's executive branch determination on this point subject to review or adversarial process, given its secret nature.

---

[14] *In re Antrobus*, 563 F.3d 1092, 1098 (10th Cir. 2009).).

Aside from the new evidence being substantially different and going to the central decisions in this case, it constitutes changed circumstances and a potential manifest injustice that precludes application of the law of the case doctrine.[15]

As argued in Appellant's Opening Brief, "[t]he new evidence would affect the deliberator, whether jury, judge, or defense lawyer - perhaps all at once in different ways, or differently at different times, or any number of ways."[16] Its preclusion alters the decision-making process of everyone involved by its omission. Not only does its omission change the deliberative circumstances, its omission also constitutes a manifest injustice to Appellant's Due Process and Fourth Amendment rights.

### III. Appellant was Denied a Full and Fair Opportunity to Litigate the Fourth Amendment Issues

*Stone v. Powell* is limited to the Fourth Amendment and does not encompass Appellant's Due Process claims. That is why the Government attempts to recharacterize Appellant's Due Process arguments as an invocation of the Exclusionary Rule. But Appellant is not arguing for the application of the Exclusionary Rule. Rather, he is arguing that he was denied the opportunity to

---

[15] App. Opening Br. at 31-32; *see United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

[16] App. Opening Br. at 32.

litigate the issue fully and fairly as to whether the Exclusionary Rule should apply given the errors and omissions in every FISC search warrant application the DOJ's OIG chose to examine. The District Court denied Appellant's request for a *Franks* hearing without the benefit of knowledge of the pervasive errors in the FISC search warrant application process.

Nothing in the non-FISA case *Stone v. Powell* forbids the use of new evidence in this Court's Fourth Amendment analysis. Nor does the Government cite any case from this Court so holding. Instead, the Government turns to non-FISA cases from the 7th and 10th circuits, *Brock v. United States* and *United States v. Lee Vang Lor*, and unpublished district court cases.[17] None of them, except one - *United States v. Mohamud* - involve FISC secret search warrants or previously unattainable new evidence like the DOJ's OIG's Report.

In *Brock v. United States*, the defendant claimed to have located a previously unavailable witness.[18] Unlike the defendant in *Brock,* Appellant is not claiming the unavailability of a witness in a non-FISA case, rather he is arguing that new evidence of pervasive errors in the secret FISC search warrant application process,

---

[17] Gov. Br. at 28-32.
[18] *Brock v. United States*, 573 F.3d 497 (7th Cir. 2009).

13

that no amount of due diligence could uncover, directly impact the Fourth Amendment analysis at issue here.

*United States v. Lee Vang Lor* involved a *pro se* defendant's, who had pleaded guilty, claim that allegedly new evidence of an arresting officer's subsequent firing for the filing of a false dispatch was impeachment evidence.[19] *Lee Vang Lor* is a non-FISA case and does not involve secret evidence derived from an error-prone secret inquisitorial ex-parte process. Nor does it involve the chain of Fed. R. Crim. Pro. 41 search warrants linked to the secret FISC search warrant central to Appellant's case. Without the new evidence, Appellant was denied the opportunity to litigate the Fourth Amendment issues fully and fairly under the standard described in *Lee Vang Lor*.

*Lee Vang Lor* summarizes the full and fair litigation analysis:

> An "opportunity" for full and fair consideration requires at least "the procedural opportunity to raise or otherwise present a Fourth Amendment claim," a "full and fair evidentiary hearing," and "recognition and at least colorable application of the correct Fourth Amendment constitutional standards."[20]

Here, the Appellant raised Fourth Amendment challenges at trial, but lacked

---

[19] *United States v. Lee Vang Lor*, 706 F.3d 1252 (10th Cir. 2013).
[20] *Id.* at 1258 (citations omitted).

the new evidence of pervasive errors in the secret FISC search warrant application process that have since come to light. This evidence is material and relevant to the Fourth Amendment analysis, as well as going towards trial strategy and Appellant's Due Process right to put on a complete defense. Appellant was denied a "full and fair evidentiary hearing" because lacking the new evidence, the District Court denied Appellant an adversarial *Franks* hearing. The application of the "correct Fourth Amendment constitutional standards" is questionable because of the missing new evidence and lack of adversarial process.

The one unpublished FISA case that the Government cites, *United States v. Mohamud*, does not involve the novel and complex issues presented here - such as the use of a FISC search warrant after failure to find evidence of any crime under a standard Fed. R. Crim. Pro. 41 search warrant.[21] Unlike *Mohamud*, in Appellant's case the Government used the alleged fruits of their subsequent FISC search warrant to obtain a new Fed. R. Crim. Pro. 41 warrant, to search for what they already claimed they had found. *Mohamud* is currently on appeal before this Court.[22]

### IV. Appellant's Uncertified Issues Have Merit

---

[21] *United States v. Mohamud*, 3:10-cr-00475-HZ (D. Or. Sep. 19, 2023).
[22] *United States v. Mohamud*, No. 23-3594 (9th Cir.).

15

Appellant has served his time, forty-one months in federal prison. He is currently under lifetime supervised release. As argued in his habeas corpus petition, Appellant requests that his lifetime probation be terminated as it violates the Eighth Amendment and the dictates of justice.

**CONCLUSION**

For the above reasons, and as argued in Appellant's Opening Brief, Appellant Keith Gartenlaub requests that this Court reverse the District Court's denial of his habeas corpus petition on the Fourth Amendment and Due Process issues as certified, or in the alternative grant relief on the uncertified Eight Amendment issue and terminate Appellant's lifetime probation.

Respectfully submitted,

DATED: July 15, 2024     TOR EKELAND LAW PLLC


By: /s/ Tor Ekeland
Tor Ekeland
Tor Ekeland Law PLLC
30 Wall Street
8th Floor
New York, NY 10005
tor@torekeland.com
(718) 737-7264


/s/ Michael Hassard
Michael Hassard
Tor Ekeland Law PLLC
30 Wall St.
8th Floor
New York, NY 10005
michael@torekeland.com
(718) 737-7264


*Pro Bono Attorneys for Appellant*
*KEITH PRESTON GARTENLAUB*

## STATEMENT OF RELATED CASES (CIRCUIT RULE 28-2.6)

*United States v. Keith Gartenlaub*, USDC Central District of California, 14-CR-00173-CAS

*United States v. Keith Gartenlaub*, Ninth Circuit Court of Appeals, 16-50339.

*Keith Gartenlaub v. United States*, USDC Central District of California, 20-CV-03711-CAS.

*United States v. Keith Gartenlaub*, Ninth Circuit Court of Appeals, 22-55799.

DATED: July 15, 2024      TOR EKELAND LAW PLLC

By: /s/ Tor Ekeland
TOR EKELAND
Tor Ekeland Law PLLC

/s/ Michael Hassard
MICHAEL HASSARD
Tor Ekeland Law PLLC

*Pro Bono Attorneys for Appellant*
*KEITH PRESTON GARTENLAUB*

# CERTIFICATE OF COMPLIANCE RULE 32(a)(7)(c)

Pursuant to Federal Rules of Appellate Procedure, rule 32(a)(7)(c), I certify that the APPELLANT'S REPLY BRIEF is double spaced, with the exception of quotations that are longer than two lines, and headings and footnotes, as permitted by rule 32(a)(7)(c). The brief is proportionately spaced using 14-point Times New Roman typeface.

Relying on my word processor software (MS-Word) to obtain the count, the brief's total word count, excluding the covers, table of contents, table of authorities, statement of related cases, certificate of compliance, and certificate of service, is 3238.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

DATED: July 15, 2024                TOR EKELAND LAW PLLC


                                    By: /s/ Tor Ekeland
                                        TOR EKELAND
                                        Tor Ekeland Law PLLC

                                        /s/ Michael Hassard
                                        MICHAEL HASSARD
                                        Tor Ekeland Law PLLC


                                        *Pro Bono Attorneys for Appellant*
                                        *KEITH PRESTON GARTENLAUB*